Filed 10/20/25  Rowe v. City of Oakland CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GWENDOLYN ROWE,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>　　　Defendant and Respondent. | A170715<br><br>(Alameda County<br>Super. Ct. No. 21CV004184) |

Gwendolyn Rowe filed suit against the City of Oakland ("City") for dangerous condition of public property and negligence arising from damage to her home caused by a fallen tree limb.  The trial court held Rowe's action was barred by the statute of limitations, finding the doctrines of equitable estoppel and equitable tolling inapplicable, and entered judgment in favor of the City.  Rowe alleges the trial court prejudicially erred, both in finding her action time-barred and in precluding her from calling a witness.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2018, a branch from a tree allegedly owned by the City of Oakland fell onto Rowe's home, causing extensive damage and making the home uninhabitable.  On February 9, 2018, Rowe timely submitted a claim to the City for damages under the Government Claims Act.  (Gov. Code, § 810 et seq.)  After Rowe filed the claim, the City provided her information about what she should expect from the City in handling her claim.  As relevant

1

here, the City's information stated that the City would contact her regarding the outcome of her claim upon completion of its investigation and that if her claim were denied, she would have six months from the date of denial to file a lawsuit.

In February 2018, Rowe spoke with the City's claims adjuster, Mark Fry, who informed her the City's claims process was long and recommended she contact her insurance company to repair her home. According to Rowe, she held a group call in March 2018 with Fry and her contractors, during which Fry stated that the City was paying Rowe's claim and that her contractors should proceed with the repairs on the home. Fry, however, disputed ever saying the City accepted or would pay the claim.

In April 2018, Rowe emailed Fry and complained that Fry's suggestion to contact her insurance company to repair her home was not working because the contractors had not been paid. Fry expressed he was "disappointed by the lack of action by your homeowners insurance." After May or June 2018, Fry stopped communicating with Rowe.

In July 2018, Rowe contacted the City and met with Deputy City Attorney Colin Bowen regarding her claim. Bowen requested additional information regarding Rowe's claim, which she provided a few days later. In early August 2018, a City contractor inspected Rowe's home as part of the claim investigation.

On August 7, 2018, a supervising investigator with the City Attorney's Office, Jerry Ho, was assigned to handle Rowe's claim. Later in August, Ho emailed Rowe: "The work that is needed to be done on our end is a bit of a process. However, rest assured that I have been actively working on this case. Within the next few business days, I will send you another email with a

2

list of items we need for your claim . . . ." Between September and October 2018, Ho and Rowe exchanged multiple emails regarding details of the claim.

Rowe sought over $830,000 in damages from the City. This included approximately $550,000 in structural damage to her home; $100,000 in water, mold, and asbestos abatement; $80,000 in lost artwork; $30,000 to repair artwork; $70,000 in lost personal property, including furnishings; $3,400 per month in lost rent from a tenant; and expenses associated with seeing a psychologist.

In October 2018, Rowe requested a meeting with Bowen and Ho. What the parties discussed at this meeting is in dispute. Rowe claims she told Bowen that she had provided all the information requested of her, but that the City had not followed through on its end. Rowe also claims Bowen told her he would make a recommendation to the city council, which would be acted on within a few months. Bowen reportedly indicated to Rowe that she would be happy with the settlement amount but if she were not, she could engage an attorney at that point. Bowen, for his part, did not recall any discussions regarding the city council or saying Rowe's claim had been or would be accepted. Bowen also denied telling Rowe to wait before engaging an attorney.

After the October 2018 meeting, Ho emailed Rowe asking her to sign and return forms authorizing the City's contact with two of her contractors that dealt with the artwork in her claim. Rowe emailed Ho stating she authorized Ho to contact one of the contractors, but she did not sign or return any authorization forms. Ho replied that the email authorization was insufficient and requested that Rowe sign the authorization forms.

In November 2018, Ho emailed Rowe again and informed her the City needed her signed authorization forms in order to continue working on that

portion of her claim. Rowe never signed the authorization forms, and communications between the parties ceased.

Time passed, and in May 2019, Rowe submitted a letter to the City Attorney's Office summarizing her interactions during the claims process and demanding immediate resolution of her claims. The City never responded to Rowe's letter.

On June 30, 2019, Rowe filed a Chapter 11 bankruptcy petition. She was represented by attorney Marc Voisenat.

In February 2020, Rowe contacted the Oakland Mayor's Office regarding her claim, and a City representative told Rowe to talk to her own attorney. After finding out Rowe contacted the City, Ho emailed Voisenat asking whether he had "filed a lawsuit to protect the statute [of limitations] for this case." Voisenat replied that no lawsuit had been filed but explained that any statute of limitations that may have expired during the bankruptcy was extended pursuant to the Bankruptcy Code. In addition to providing Ho the bankruptcy case number, Voisenat explained that a demand was sent in October 2019 but they had not received a response from the City to date.

On February 25, 2020, Ho sent a letter on behalf of the City to Voisenat discussing all components of Rowe's claim. The letter pointed out that the City did not have evidence of certain claim components and that certain claimed amounts were improper. The letter also identified certain inconsistencies between Rowe's bankruptcy filing and her claim to the City, noting that, contrary to her City claim, her bankruptcy filing indicated she did not possess any collectibles of value, including artwork. The letter requested that Rowe sign an attached form that would authorize the City to physically inspect her artwork. The letter also stated the City did not believe Rowe's claim for bodily injuries was compensable but asked her to sign a

4

Medical Authorization to allow the City's review of any supporting medical documentation. Additionally, the letter noted that damages to Rowe's "dwelling structure" had been "resolved in full" with Rowe's insurance carrier.

In March 2020, Ho received Voisenat's request for a meeting with the City Attorney's Office to discuss Rowe's claim. Ho replied affirmatively to the request, but urged Voisenat to respond to the City's February 25, 2020, letter. In May 2020, Voisenat responded to the City's request for information but stated that the authorization forms for artwork and medical document inspections were not attached to the City's email and that Rowe would sign them after she reviewed them. Neither Ho nor any other City representative ever responded to this communication from Voisenat, and no meeting was ever held. Rowe never filled out or returned any authorization forms.

Meanwhile, the bankruptcy court granted Rowe's application to employ special counsel on June 15, 2021. According to Rowe, around this time she learned that the City had paid her insurer's subrogation claim for the emergency repairs made to her home, which prompted her to file an adversary complaint against the City in the bankruptcy court on August 17, 2021. On December 14, 2021, the court abstained from ruling on Rowe's adversary complaint. Rowe filed this lawsuit the following day. Based on the parties' stipulation and an order from the bankruptcy court, the instant lawsuit was deemed filed on August 17, 2021, the date Rowe filed her adversary complaint in the bankruptcy court.

The trial court granted the City's motion to bifurcate the trial to hear the statute of limitations issues first. The court held a bench trial over seven days between September and November 2023. For the trial, the parties stipulated that the City "never made an offer to [Rowe's] Government Tort

5

Claim" and that the City "never rejected [Rowe's] Government Tort Claim in writing" pursuant to Government Code section 913. In March 2024, the trial court issued a Statement of Decision holding the causes of action were time-barred because Rowe filed the adversary complaint almost two months after the statute of limitations expired. The court also found the doctrines of equitable tolling and equitable estoppel were inapplicable. In April 2024, the court issued a judgment dismissing the case with prejudice.

## DISCUSSION

Rowe contends the trial court erred in holding that her action against the City is time-barred and that the doctrines of equitable tolling and equitable estoppel are inapplicable. Rowe also argues the court committed reversible error by precluding her from calling a witness.

"We apply well-established standards of review to a judgment based upon a statement of decision issued after a bench trial. [Citation.] We review questions of law de novo and we review the trial court's findings of fact under the substantial evidence standard. [Citation.] We construe findings of fact liberally to support the judgment; consider the evidence in the light most favorable to the judgment; draw all reasonable inferences in support of the findings; and infer that the trial court ' "impliedly made every factual finding necessary to support its decision." ' " (*Gajanan Inc. v. City and County of San Francisco* (2022) 77 Cal.App.5th 780, 791–792.)

### A. Statute of Limitations

The Government Claims Act requires certain claims to be filed with a public agency before the injured party can sue. (Gov. Code, §§ 810, 945.4.) Once the agency receives the claim, it has 45 days to act. (*Id.*, § 912.4, subd. (a).) If the agency fails or refuses to act on a claim, it is considered rejected on the 45th day. (*Id.*, § 912.4, subd. (c).) Where, as here, the public

6

agency does not provide written notice that the claim was rejected, the claimant has two years from the accrual of the action to file suit. (*Id.*, § 945.6, subd. (a)(2).) The date of accrual is the date the injury occurred. (*Id.*, § 901.)

Here, Rowe's action accrued on January 30, 2018, when the tree branch fell and caused damage to her home. She timely filed her claim with the City on February 9, 2018, and since the City did not accept or reject her claim, it was deemed rejected 45 days later by operation of law. (Gov. Code, § 912.4, subd. (c).) Because the City never formally acted on her claim, Rowe ordinarily would have had until January 30, 2020, i.e., two years from the accrual of her action, to file suit. (*Id.*, § 945.6, subd. (a)(2).)

On June 30, 2019, however, Rowe filed her bankruptcy petition. This triggered a bankruptcy-based extension of the limitations period.

Specifically, Bankruptcy Code section 108, subdivision (a), provides: "If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—[¶] (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or [¶] (2) two years after the order for relief." (11 U.S.C. § 108, subd. (a) ("section 108(a)").)

"Section 108(a) thus establishes three requirements. First, the applicable nonbankruptcy law must 'fix a period within which the debtor may commence' the action. Second, the debtor must file for bankruptcy before expiration of that period. Finally, the debtor must commence the action before expiration of the extension period. This statute applies to debtors as well as trustees. [Citations.] Since the filing of the petition for bankruptcy constitutes entry of an 'order for relief' within the meaning of the statute,

7

[citation], section 108(a) provides a 'tolling period' of at least two years after the plaintiff-debtor files a petition for bankruptcy." (*In re AMS Realty, Inc.* (1990) 114 B.R. 229, 232 (*AMS Realty*), quoting *Seawinds, Ltd. v. Nedlloyd Lines, B.V.* (1987) 80 B.R. 181, 187, affirmed (9th Cir. 1998) 846 F.2d 586.)

In this case, the two-year statute of limitations (Gov. Code, § 945.6, subd. (a)(2)) had not expired before Rowe filed her bankruptcy petition. Consequently, section 108(a) permitted Rowe to file her adversary complaint against the City before the later of (1) the end of the original state limitations period, including any state suspension of that period; or (2) two years after the bankruptcy petition was filed. Pursuant to section 108(a)(2), Rowe had until June 30, 2021, as the later of the two bankruptcy time periods, to timely file an action. Rowe, however, did not file her adversary complaint against the City until August 17, 2021.

The parties do not contest section 108(a)'s application to this case. Rather, the parties dispute whether Emergency Rule 9 of the California Rules of Court ("Emergency Rule 9"), promulgated by the Judicial Council of California in response to the COVID-19 pandemic, tolls section 108(a)(2)'s two-year period.

Emergency Rule 9 provides: "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled from April 6, 2020, until October 1, 2020." The Advisory Committee Comment to Emergency Rule 9 states the rule "is intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action," and this "includes special proceedings." The comment clarifies the "rule also applies to statutes of limitations . . . found in codes other than the Code of Civil Procedure, including . . . , for example, the Family Code and Probate Code." Had Rowe

8

never filed for bankruptcy, there is no question Emergency Rule 9 would have no application.  That is because the applicable state limitations period for Rowe's action against the City (Gov. Code, § 945.6, subd. (a)(2)) would have expired on January 30, 2020, a date that preceded Emergency Rule 9's adoption and tolling period.  But having filed for bankruptcy in June 2019, Rowe contends that Emergency Rule 9 tacked another 178 days to the two-year period in section 108(a)(2), meaning that the filing of her adversary complaint against the City on August 17, 2021, was a timely initiation of her action in state court.

The trial court declined to apply Emergency Rule 9's tolling provision on the grounds it would violate the federal supremacy clause to allow the rule to impede the federal law set forth in section 108(a).  In this regard, the court observed that there was no federal equivalent to Emergency Rule 9, that the bankruptcy court had remained open for filings during the entire period covered by Emergency Rule 9's tolling provision, and that section 108(a)(2) afforded Rowe ample time to file her adversary complaint against the City (i.e., two years after she initiated the bankruptcy proceeding).  In sum, the court concluded that Rowe's failure to timely file her adversary complaint within the two-year period in section 108(a)(2) was dispositive of the statute of limitations issue.

In challenging the trial court's ruling, Rowe argues we should not find Emergency Rule 9 preempted because its tolling provision does not impede or hinder section 108(a) but instead facilitates its purpose of giving claimants such as Rowe more time to file suit.  Rowe additionally emphasizes that California's statute of limitations and tolling rules, including Emergency Rule 9, should apply where, as here, state causes of action filed in state court

are at issue. Though we agree state rules are properly applied under section 108(a)(1), the same cannot be said for section 108(a)(2).

"[W]hether state law is federally preempted is "a pure question of law" that we independently review." (*Center for Environmental Health v. Perrigo Co.* (2023) 89 Cal.App.5th 1, 16.)

" ' "The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law." [Citations.] Similarly, federal agencies, acting pursuant to authorization from Congress, can issue regulations that override state requirements. [Citations.] Preemption is foremost a question of congressional intent: did Congress, expressly or implicitly, seek to displace state law?' " (*Solus Industrial Innovations, LLC v. Superior Court* (2018) 4 Cal.5th 316, 331 (*Solus Industrial Innovations*).)

As the California Supreme Court explains, there are " several species of preemption. Congress may expressly preempt state law through an explicit preemption clause, or courts may imply preemption under the field, conflict, or obstacle preemption doctrines.' [Citation.] Implied preemption, for its part, may be found '(i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation]; (ii) when compliance with both federal and state regulations is an impossibility [citation]; or (iii) when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' [Citations.] Because preemption questions turn on congressional intent, a reviewing court begins with the text of the federal statute, 'the source of the best evidence concerning the breadth of Congress's preemptive intent.' " (*Solus Industrial Innovations, supra*, 4 Cal.5th at p. 332, italics omitted.)

10

In *California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724 (*Leeds*), a statute of limitations case, the appellate court held that " 'federal bankruptcy law preempts state law but only to the extent that the state law conflicts with the federal law.' [Citations.] Thus, even if the federal bankruptcy law prevails, the state statute remains valid except in situations preempted by federal law. Therefore, even if the federal statute prevails, the state provision tolling the limitations period . . . continues to apply, *if* the bankruptcy petition is filed before the state limitations period expires." (*Id.* at p. 733.) The *Leeds* court additionally found that "numerous federal authorities have concluded that . . . section 108(a) controls over conflicting limitations statutes." (*Id.* at p. 734.)

As indicated, section 108(a) provides two options for timely filing of an action, each of which applies only if the petition for bankruptcy is filed before the state limitations period has expired. Under the first option, section 108(a) allows a trustee or debtor in possession to bring an action if it is timely under a state limitations period, as adjusted by any applicable suspension of the limitations period.[1] (§ 108(a)(1).) In that instance, there is no preemption because the federal law does not conflict with the state law.

Under the second option, section 108(a) allows a trustee or debtor in possession to bring an action within two years after a bankruptcy petition is filed. (§ 108(a)(2); *AMS Realty, Inc.*, *supra*, 114 B.R. at p. 232.) When the filing of an adversary complaint is timely under this two-year period but no longer timely under state law limitations and tolling provisions, the statutory

---

[1]    As indicated, the two-year state limitations period on Rowe's claim expired on January 30, 2020, before Emergency Rule 9 went into effect. Because Emergency Rule 9 offered no basis for tolling or suspending an expired limitations period, section 108(a)(1) has no application to Rowe's claim.

11

language contemplates that the two-year period is controlling and preempts the shorter state law period. (See *Leeds*, *supra*, 233 Cal.App.3d at p. 734 [section 108(a)'s two-year limitations period preempts state one-year limitations period for malpractice claims].)

Moreover, and as relevant here, though section 108(a)(1) specifically includes any applicable suspension periods under state law (such as Emergency Rule 9), section 108(a)(2) does not. Because Congress included state law tolling and suspension periods in section 108(a)(1) but omitted them from section 108(a)(2), we may reasonably infer such exclusion was purposeful. (See *Russello v. United States* (1983) 464 U.S. 16, 23 [" '[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' "]; accord, *People v. Trevino* (2001) 26 Cal.4th 237, 242 [articulating equivalent state law construction principles].)

Given the language and structure of section 108(a), we conclude that Congress intended section 108(a)(2)'s two-year period to be both fixed and controlling where such period provides more time for filing an action than the state law limitations and tolling periods contemplated in section 108(a)(1). (*Leeds*, *supra*, 233 Cal.App.3d at pp. 733–734.) Therefore, applying Emergency Rule 9's six-month tolling provision would frustrate congressional intent to have actions in bankruptcy court initiated under the later of two specified time periods. Because such tolling "would effectively vacate" section 108(a)(2)'s two-year period for bringing an action, it is barred by the supremacy clause. (Cf. *Citgo Petroleum Corp. v. Ranger Enters., Inc.* (W.D. Wis. 2008) 573 F.Supp.2d 1114, 1121–1122 (*Citgo Petroleum Corp.*) [party

12

could not rely on state compulsory counterclaim law to defeat federal limitations period for claimed violation of a federal act].)

Rowe cites *Varlack v. Ohio Security Insurance Company* (N.D. Cal., Feb. 15, 2023, No. 22-CV-02478-VC) 2023 U.S. Dist. Lexis 26811, for the proposition that federal courts have consistently applied Emergency Rule 9 to toll the statute of limitations for California state law claims. But *Varlack* and the cases it cites all involved situations where the state law limitations period presented no conflict with a federal statute such as section 108(a); that is, the federal courts simply found that, because California statutes of limitations applied to the California state law claims at issue, Emergency Rule 9's tolling provision should apply as well. (*Varlack*, at p. *1; cf. *Shubin v. Universal Vacation Club* (C.D. Cal. 2022) 622 F.Supp.3d 849, 853, aff'd (9th Cir., Apr. 1, 2024, No. 23-55016) 2024 U.S. App. Lexis 7610 [refusing to apply Emergency Rule 9 because California's choice of law rules required California causes of action arising in a foreign country to be timely under the laws of that foreign country].)

The parties have not cited, nor have we found, any case law addressing whether a state tolling provision may apply to a federal statute such as section 108(a) that provides a fixed time period for initiating actions. We have, however, found one California decision holding that the two-year period in section 108(a) must be applied to a state malpractice claim even if the claim would be time-barred under the applicable one-year limitations period provided by California law. (*Leeds*, *supra*, 233 Cal.App.3d at pp. 733–734; accord *Citgo Petroleum Corp.*, *supra*, 573 F.Supp.2d at p. 1122 [supremacy clause bars "[a] state law that would effectively vacate a federal statute of limitations"].) And that is the situation here.

13

In sum, had Rowe never filed for bankruptcy, Emergency Rule 9 would not have tolled the applicable state limitations period (Gov. Code, § 945.6, subd. (a)(2)) for her action because the rule was adopted after that limitations period expired. But since Rowe did file for bankruptcy before the state limitations period expired, her ability to file an action against the City became subject to the two time periods provided in section 108(a), which were available to Rowe only because of her status as a debtor in possession. Though Rowe could have taken advantage of section 108(a)(2)'s two-year period, she neglected to file her adversary complaint against the City within that period. Having failed to do so, she cannot invoke Emergency Rule 9 as a means to tack nearly six more months to the two-year period in section 108(a)(2). That is because the language and structure of section 108(a) make clear that the two-year period in section 108(a)(2) is not subject to extension by state tolling provisions.[2]

### B. Equitable Remedies

Alternatively, Rowe argues we should apply equitable estoppel or equitable tolling to prevent the City from asserting a statute of limitations defense. We address equitable estoppel first.

#### 1. Equitable Estoppel

To show the applicability of the doctrine of equitable estoppel, it was incumbent on Rowe to establish: " '(1) [T]he party to be estopped [the City] must be apprised of the facts; (2) [the City] must intend that [its] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party [Rowe] must be

---

[2] We deny Rowe's request for judicial notice of the City's brief on the motion to dismiss in bankruptcy court, as it appears irrelevant to the matters addressed.

ignorant of the true state of facts; and (4) [she] must rely upon the conduct to [her] injury.' " (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 656 (*J.M.*).)

"The existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence. [Citation.] When the evidence is not in conflict and is susceptible of only one reasonable inference, the existence of an estoppel is a question of law. [Citation.] The doctrine of equitable estoppel may be applied against the government where justice and right require it." (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305–306.)[3]

Here, the trial court found the record did not show any statements or conduct on the City's part from which any person could reasonably conclude that the City or its agents: (1) accepted liability for Rowe's claims; (2) "intended to calculate an offer to settle without the additional evidence of the loss"; (3) intended to waive the statute of limitations; or (4) intended to, or told [Rowe] that it intended to, recommend any amount of settlement to the City Council on [her] claim. In the court's words, "the overwhelming evidence is that the City by its agents did nothing and said nothing that could reasonably have led [Rowe] to believe that the City waived or agreed to toll the statute of limitations." In reaching its conclusions, the court specifically

---

[3] Citing *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801, Rowe argues we should apply de novo review because our decision could have " 'practical significance far beyond the confines of the case then before the court.' " We decline to do so. Among other things this case involves rather unique factual circumstances and credibility determinations that are not suited to de novo review.

15

found the testimony of the City's witnesses credible and Rowe's testimony to the contrary not credible.

On appeal, Rowe maintains the City's course of conduct led her to reasonably believe it was not denying her claim, thereby causing her to delay filing suit. In support, she highlights evidence in the record showing that: (1) the City told her its investigation would take some time; (2) the City said it would inform her of the outcome of the investigation, though it never did; and (3) Rowe was pursing her claim, and the City continued to investigate it, from February 2018 to February 2020. We are not persuaded.

The parties stipulated that the City neither accepted nor rejected Rowe's claim within 45 days of its filing on February 9, 2018. This provided substantial evidence supporting the trial court's determination that Rowe's claim was denied, by operation of law, on March 26, 2018. (Gov. Code, § 912.4, subd. (c).)

Contrary to Rowe's suggestion, the fact that the City continued communications with her after the 45-day claim denial does not compel a finding of an estoppel. Rowe's reliance on *Potstada v. City of Oakland* (1973) 30 Cal.App.3d 1022 (*Potstada*) is misplaced.

In *Potstada*, the plaintiff filed a claim with the City after a collision with a City police car. (*Potstada, supra*, 30 Cal.App.3d at pp. 1024, 1026.) The City never acted on the claim and it was therefore deemed denied by operation of law. (*Id*. at pp. 1026–1027.) Though the plaintiff filed suit after the applicable six-month statute of limitations expired (*id*. at p. 1027), both the trial and appellate courts found that equitable estoppel precluded the City's reliance on the statute of limitation as a bar to the plaintiff's claim. (*Id*. at p. 1028.)

16

Key to *Potstada*'s analysis was the appellate court's observation that the City's claim investigator was involved in negotiations with the plaintiff to settle the claim, which led to settlement offers and counteroffers involving specific sums of money. (*Potstada*, *supra*, 30 Cal.App.3d at pp. 1025–1027, 1029.) There, the court noted the City's statutory duty to apprise the city council of the plaintiff's presentation of an offer to settle and the council's statutory authority to reconsider any settlement offer even after it had been rejected, but the court also observed the plaintiff was unaware that the investigator did not present the offer to the council and instead chose to negotiate settlement prior to having the council act. (*Id*. at p. 1028.) On that record, where the efforts to settle occurred after the claim's rejection by operation of law but within the six-month window to file suit (*id*. at p. 1027), the court concluded the "plaintiff could have justifiably concluded that the city council had authorized [the investigator] to compromise the claim. Upon such justifiable assumption plaintiff could conclude that he would receive written notice of rejection under [Government Code] section 913 of any final offer of settlement." (*Id*., at p. 1029.) In short, the plaintiff was justified in relying on the investigator's conduct as indicative that the city council was reexamining his offer, regardless of its earlier deemed denial. (*Ibid*.)

Here, in contrast, the City had not completed its investigation, so the parties had not entered into settlement negotiations. It is undisputed that the City never extended an offer to Rowe to settle her claim, let alone one for a specific sum of money. Though the Government Claims Act allows public agencies to re-examine a previously rejected offer of settlement as long as it does so within the statute of limitations (Gov. Code, § 913.2), case law indicates that settlement negotiations do not affect the statute of limitations unless memorialized in writing. (See *Isaacson v. City of Oakland* (1968)

17

263 Cal.App.2d 414, 420–421; Gov. Code, § 912.4, subd. (b) [parties may extend period for board to act by written agreement]; *id.*, § 945.6, subd. (a)(2) [extended period to act under Government Code section 912.4, subdivision (b) is added to the two-year limitation period.])  As the Law Revision Commission Comments for the 1970 amendment of Government Code section 945.6 state, "If notice is not given, the two-year period allows ample time within which the claimant may file a court action."  Thus, the Legislature was aware that a public agency could reexamine a claim before the limitations period expired but did not provide a tolling provision for those periods of reevaluation.[4]

We acknowledge Rowe and the City engaged in ongoing communications regarding her claim, most actively between February 2018 and November 2018 and then from time to time up until February 2020.  In November 2018, the City told Rowe it needed her signed authorization to continue working on the portion of her claim concerning her artwork.[5]  Rowe

---

[4]     Rowe also argues the City's continued investigation of the claim after its rejection by operation of law was a condition precedent that delayed the start of Rowe's two-year limitations period.  We agree the filing of a claim is a condition precedent and action by the city council, including rejection by operation of law, are required for filing suit against the City.  (Gov. Code, § 945.4.)  The City's conduct, however, does not change the date of accrual, which begins the limitations period.  (See *id.*, §§ 901, 945.6, subd. (a)(2).)  And because it is undisputed that Rowe's action accrued on the date the branch fell on her home, we reject Rowe's further contention that the trial court erred in denying her a jury trial on the application of Government Code section 945.4's condition precedent.

[5]     Rowe suggests the City's claimed need for signed authorizations was inauthentic because she had provided authorization via email, which would have been an acceptable substitute according to testimony in the record.  Such detail has no bearing on whether it was reasonable for Rowe to believe that she could delay filing an action or that the City would not assert the statute of limitations bar.

18

did not provide that authorization, and communications between the parties ceased until February 2020, at which point the City asked Rowe's attorney whether he had filed suit to preserve the claim. These communications do not parallel the type of active settlement negotiations at issue in *Potstada* and are insufficient to establish a basis for equitable estoppel.

Moreover, after being informed in February 2020 that the statute of limitations was extended due to the filing of the bankruptcy petition, the City asked for additional information and signed authorization forms necessary to complete evaluation of Rowe's claim. And when Rowe's attorney sought a meeting with the City in May 2020, the City never responded. Such conduct on the part of the City could not have been reasonably understood to indicate that a specific settlement offer was in the works.

It also bears emphasizing that, after all communications with the City ceased in May 2020, Rowe still had over a year to file an adversary complaint against the City under section 108(a)(2). Her failure to do so, despite having the guidance of counsel and notice that the statute of limitations was running, amply supports the trial court's decision to deny equitable estoppel.

Before closing on this issue, we note Rowe argues that the trial court's inquiry into whether the City intended to waive the statute of limitations was too narrow and that the relevant issue is whether the City's conduct would have caused a reasonable person to delay filing suit. No matter. The evidence supporting the trial court's finding that the City's conduct could not be reasonably viewed as waiving the statute of limitations equally supports a determination that Rowe's delay in filing her action was not based on a reasonable belief that the City would be settling her claim.

19

*2. Equitable Tolling*

The doctrine of equitable tolling is a "general policy" which favors relieving plaintiffs from the bar of a limitations statute "when, possessing several legal remedies [they], reasonably and in good faith, pursue[] one designed to lessen the extent of [their] injuries or damage." (*Addison v. State of California* (1978) 21 Cal.3d 313, 317.) A plaintiff bears the burden of proving by a preponderance of evidence that: (1) the defendant had timely notice of the plaintiff's claim; (2) the defendant will not suffer any prejudice if the limitations period is tolled; and (3) the plaintiff acted reasonably and in good faith. (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 724.) Though some courts have also required plaintiffs to pursue "an alternate available administrative or legal remedy," the California Supreme Court declined to recognize this as a requirement for equitable tolling. (*Id.* at p. 725.) Instead, "[t]he doctrine is applied flexibly to 'ensure fundamental practicality and fairness.'" (*J.M.*, *supra*, 2 Cal.5th at p. 658.)

As with equitable estoppel, "equitable tolling is a fact intensive issue and it is determined based upon evidence." (*Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 434.) We note both Rowe and the trial court focused on the third element of the equitable tolling analysis, i.e., whether Rowe acted reasonably and in good faith. We do so as well.

Rowe argues the limitations period should have been tolled "at least for the period the City was actively investigating the claim," which gave Rowe the "unmistakable impression that the City was going to advise her of the investigation's outcome once it was completed." (Italics omitted.) Citing the trial court's finding " 'that after February of 2020, the pursuit of plaintiff's governmental tort claim was almost non-existent and was neither a

20

reasonable pursuit nor a good faith pursuit of an alternative legal remedy,'" Rowe invites us to infer that before February 2020, she was pursuing her claim "actively, reasonably, and in good faith."

We decline Rowe's invitation. Substantial evidence supports the trial court's conclusion that Rowe did not engage in a good faith pursuit of a resolution to her claim. Rowe's communications with the City regarding her claim never resulted in settlement negotiations because the City was unable to finish evaluating Rowe's claim. As early as November 2018, the City specifically told Rowe, through Ho, to return a signed authorization for purposes of allowing the City to assess the artwork portion of Rowe's claim. After that email from Ho, communications between Rowe and Ho ceased and there was no reason at that point for Rowe to believe she had provided the City with everything it needed to fully evaluate her claim and make her a settlement offer.

Moreover, nearly six months later in May 2019, Rowe submitted a letter to the City Attorney's Office. Rowe received no response to that letter, and she failed to further follow up. Communications regarding the claim ceased until February 2020, at which point Ho emailed Rowe's attorney to ask whether they filed suit to protect the statute of limitations. Thus, between November 2018 and February 2020, Rowe's pursuit of the claim with the City was almost non-existent.

Thereafter, between February 2020 and May 2020, the City and Rowe picked up their discussions and exchanged emails and calls regarding the claim. The City's letter dated February 25, 2020 informed Rowe that it disputed portions of her claim; the letter also explained the City did not have enough evidence regarding other portions of the claim. The letter repeated the City's previous request for a signed authorization form pertaining to her

21

artwork claim and also requested a signed authorization form pertaining to her medical claim. Rowe's attorney indicated Rowe would sign the forms once she had an opportunity to review them, but she never did. And as recounted above, Ho's February 2020 email put Rowe on notice that the statute of limitations was a live issue regardless of any previous impressions she may have formed of the City's willingness to settle her claim.

Finally, Rowe testified she filed her adversary complaint after discovering sometime between June and August 2021 that the City separately settled with her insurer. But that testimony was belied by the City's February 25, 2020, letter which stated the portion of Rowe's claim relating to the damage to her home structure had been "resolved in full" with her insurer.

At bottom, after all communications with the City ceased in May 2020, Rowe still had over a year to file suit but did not do so. On this record, substantial evidence supports the trial court's determination that Rowe did not act reasonably and in good faith so as to warrant equitable tolling.

### C. Preclusion of Testimony

Lastly, Rowe argues the trial court erred by preventing her from calling Dr. Gerard Aglioni (Rowe's treating therapist) as a trial witness. Rowe suggests that Dr. Aglioni's testimony would have corroborated her own testimony regarding her belief that a "decision from the City was forthcoming and that she need not file suit until she received it." This final contention provides no basis for relief.

We review a trial court's evidentiary rulings for abuse of discretion. (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639.) A court abuses its discretion only where there is a clear showing that its decision exceeded the bounds of reason, all the circumstances being

22

considered.  (*Id.* at p. 640.)  Additionally, " '[a]n erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error." ' "  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 857.)

Here, Rowe fails to show the relevance of Dr. Aglioni's testimony or any prejudice from its preclusion.  Even assuming Dr. Aglioni would have corroborated Rowe's subjective belief that the City was going to make her a settlement offer, such belief was not objectively reasonable in light of the substantial evidence showing the character of the parties' communications and the lack of any evidence indicating the City was in a position to make such an offer.  (See pt. B, *ante*.)  Thus, testimony corroborating Rowe's state of mind would not have resulted in a more favorable outcome for Rowe.

### DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

_____
Fujisaki, Acting P.J.


WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.


*Rowe v. City of Oakland* (A170715)