Filed 11/17/25; certified for publication 12/16/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KENNETH M. BAREILLES,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>STATE WATER RESOURCES CONTROL BOARD et al.,<br><br>        Defendants and Respondents. | A171456<br><br>(Sonoma County<br>Super. Ct. No. SCV-273798) |

Kenneth M. Bareilles appeals a judgment entered after the trial court sustained without leave to amend a demurrer by the State Water Resources Control Board (the State Board) to his first amended petition for writ of mandate.  His claim against the State Board arose from its decision to decline exercising its discretion under Water Code[1] section 13320 to review an order by the regional water board imposing administrative civil liability on Bareilles.  Bareilles contends that *Johnson v. State Water Resources Control Bd.* (2004) 123 Cal.App.4th 1107 (*Johnson*) and *Monterey Coastkeeper v. California Regional Water Quality Control Bd., etc.* (2022) 76 Cal.App.5th 1 (*Monterey Coastkeeper*), on which the trial court relied in sustaining the demurrer, were wrongly decided because their interpretation of section 13320 violates California's separation of powers doctrine.  We disagree and affirm.

---

[1] Undesignated statutory references are to the Water Code.

1

# I. BACKGROUND

## A. Regulatory Background

The Porter-Cologne Water Quality Control Act (§ 13000 et seq.) (Porter-Cologne Act) "is the principal law governing water quality regulation in California." (*Monterey Coastkeeper*, *supra*, 76 Cal.App.5th at p. 8.) "The Legislature designated the State Board and nine regional water quality control boards . . . as the agencies with primary responsibility for the regulation of water quality under the Porter-Cologne Act. (§ 13001.) The State Board formulates and adopts statewide policy for water quality control, allocates funds, and oversees the activities of the regional water boards. (§§ 13140, 13320.) Each regional water board is responsible for, among other things, water quality protection, permitting, inspection, and enforcement actions within its region. (§ 13225, subd. (a).)" (*Monterey Coastkeeper*, *supra*, 76 Cal.App.5th at p. 8.)

One function of the regional boards is to regulate discharges of waste. (*Monterey Coastkeeper*, *supra*, 76 Cal.App.5th at p. 8.) As part of this function, the regional board may prescribe " 'waste discharge requirements' " (WDRs) to implement water quality control plans for any existing discharge or proposed discharge. (*Environmental Law Foundation v. State Water Resources Control Bd.* (2023) 89 Cal.App.5th 451, 461; see §§ 13263, subd. (a), 13267.) The regional board may issue a waiver of WDRs for a "specific discharge or type of discharge." (§ 13269, subd. (a)(1).) These categorical waivers must set forth certain conditions. (See § 13269, subd. (a)(2).) The regional board is also authorized to issue a cleanup and abatement order to a person who has created a condition of pollution or nuisance by discharging waste into state waters. (§ 13304, subd. (a).) In doing so, the regional board

2

may order the party to provide "technical or monitoring reports." (§ 13267, subd. (b)(1).)

If a party fails to provide the reports required by the regional board or violates a cleanup and abatement order, "a waste discharge requirement, waiver condition, certification, or other order or prohibition," the regional board may impose civil liability through an administrative hearing. (§§ 13350, subds. (a), (e), 13268, subds. (a), (b)(1).)

Under section 13320, a party aggrieved by the regional board's imposition of administrative civil liability may petition the State Board to review the order. (§ 13320, subd. (a).) The aggrieved party must petition the State Board within 30 days of the challenged order. (*Ibid*.) If the party fails to timely petition the State Board for review, the State Board retains discretion to review a regional board order on its own motion: "The state board may, on its own motion, at any time, review the regional board's action or failure to act." (*Ibid*.)

### B. Factual Background

"Because the challenged ruling arises in the context of a demurrer, we accept as true the material factual allegations of the first amended petition for writ of mandate." (*Johnson, supra*, 123 Cal.App.4th at p. 1110.)

Bareilles owns property in Sonoma County. In October 2020, after his property burned in a fire, he submitted a "Notice of Emergency Timber Operations" (Notice), which was accepted by the California Department of Forestry and Fire Protection. The Notice allowed Bareilles to conduct timber harvest activities on his property in accordance with a categorical waiver of WDRs.

After Bareilles was observed discharging waste in violation of the categorical waiver and the regional water quality control plan, the regional

3

board issued an emergency "Clean Up and Abatement Order" (CAO) directing Bareilles to submit an interim cleanup and stabilization plan to prevent further discharges of waste.

Bareilles failed to submit the interim plan by the deadline. As a result, the regional board issued him a notice of violation in March 2022. Within the following year, Bareilles received two more notices of violation from the regional board for failing to submit the cleanup and restoration plan required by the regional board's long-term CAO, issued in September 2022, and for violations of the categorical waiver and the regional water quality control plan.

In March 2023, the regional board's prosecution team issued an administrative civil liability complaint. The complaint proposed a penalty of over $250,000 for Bareilles's alleged violations. After a hearing was held in June, the regional board issued an order imposing administrative civil liability on Bareilles in the amount of $276,000 (the "ACL order"). The order advised Bareilles that he had 30 days from the date of the order to petition the State Board for review of the order.

In July 2023, Bareilles filed a petition for writ of mandate in the superior court seeking the reduction or dismissal of the civil fines imposed by the regional board.

In August 2023, nearly two months after the regional board issued the ACL order, Bareilles asked the State Board to review the ACL order. Counsel for the State Board informed Bareilles that his failure to petition the State Board for review within 30 days from the date of the ACL order, as required by section 13320, precluded judicial review of the order. In response, Bareilles asked the State Board to exercise its discretion under section 13320 to review the order on its own motion. After reviewing

4

Bareilles's writ petition, the State Board declined to initiate a review on its own motion.[2]

Bareilles then amended his writ petition to add the State Board as a party. He alleged that the State Board, in refusing to review the ACL order on its own motion, "fully abused [its] admitted discretion and ability to review all the evidence and record."

The State Board and the regional board (collectively, respondents) demurred to Bareilles's amended petition for writ of mandate. Respondents argued that the trial court lacked jurisdiction over the ACL order because Bareilles failed to exhaust his administrative remedies under section 13320 by failing to petition the State Board for review within 30 days of the issuance of the order. Citing *Monterey Coastkeeper, supra*, 76 Cal.App.5th 1 and *Johnson, supra*, 123 Cal.App.4th 1107, respondents further argued that the State Board's decision to not review the ACL order on its own motion was not reviewable by the court.

The trial court sustained respondents' demurrer in its entirety without leave to amend. Bareilles moved for reconsideration, which the court denied. Judgment was entered in favor of respondents and against Bareilles.

---

[2] We grant the State Board's unopposed request for judicial notice of the legislative history of Assembly Bill No. 3036 (1995–1996 Reg. Sess.), the ACL order, and the letter it sent to Bareilles. (Evid. Code, §§ 452, subds. (a), (c), 459; *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 608 [proper to take judicial notice of letters from Department of Insurance approving insurance program].) We decline, however, to take judicial notice of the letter Bareilles sent to the State Board. (See *ibid.*) In any event, Bareilles's amended writ petition states that the letter is attached to the petition (though it appears Bareilles omitted the petition's attachments from his appellant's appendix), and the petition contains allegations describing the letter.~(AA 13-14)~

5

## II. DISCUSSION

On appeal, Bareilles acknowledges he did not exhaust his administrative remedies with respect to the ACL order because he failed to petition the State Board for review within 30 days from the date of the order. (See § 13320, subd. (a); *Monterey Coastkeeper v. Monterey County Water Resources Agency* (2017) 18 Cal.App.5th 1, 18.) "Under the doctrine of exhaustion of administrative remedies, 'the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' " (*Id.* at p. 12.)

Rather, this appeal concerns the State Board's discretion under section 13320 to review a regional board order on its own motion at any time. (§ 13320, subd. (a).) Bareilles argues that a decision by the State Board to decline review of a regional board order is itself subject to judicial review, and thus the trial court erred in sustaining the State Board's demurrer on the ground that the court was barred from reviewing the State Board's refusal to review the ACL order on its own motion. Reviewing the issue de novo (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420), we disagree that the State Board's decision to not review the ACL order is subject to judicial review.

### A. Judicial Review Under the Porter-Cologne Act

Orders imposing administrative civil liability under the Water Code are not subject to review by any court or agency except as provided by sections 13320 and 13330. (§ 13323, subd. (d).) Section 13320 concerns only State Board review. Section 13330, on the other hand, provides for judicial review of a "decision or order" of the State Board or regional board by way of a petition for writ of mandate under Code of Civil Procedure section 1094.5.

6

(§ 13330, subds. (a), (b), (e).) Where the State Board denies review of a regional board order that is subject to review under section 13320, the aggrieved party may obtain review of the regional board order in the superior court within 30 days of the denial. (§ 13330, subd. (b).)

The question of whether a State Board's declination to review a regional board order is itself subject to judicial review was first considered in *People ex rel. Cal. Regional Wat. Quality Control Bd. v. Barry* (1987) 194 Cal.App.3d 158 (*Barry*). There, the State Board declined to grant a petition for review of a regional board's decision to seal off a mine and perform cleanup work on the defendant's property. (*Id.* at p. 168.) The regional board then filed a motion in the superior court for entry onto the property, which the court granted. (*Id.* at pp. 168–169.)

On appeal, the defendant in *Barry* argued that section 13320 mandated the State Board to review a regional board decision and that absent such review, the regional board's orders were not final orders. (*Barry*, *supra*, 194 Cal.App.3d at pp. 170–171.) The court disagreed with this interpretation based on section 13320's plain language and its legislative history, both of which demonstrated an intent to make the State Board's review discretionary. (*Id.* at pp. 171–173.) The court further concluded that the State Board's discretion was "unreviewable." (*Id.* at p. 176.) It reasoned that "a policy of mandatory review would needlessly impose a second level of judicial review on the agency," and "[s]uch review would merely postpone the aggrieved citizen's resort to judicial review of orders of regional boards." (*Id.* at pp. 176–177.)

The *Barry* court also noted that section 13330 did not provide for judicial review of the State Board's refusal to review a regional board order. (*Barry*, *supra*, 194 Cal.App.3d at pp. 174–175.) At that time, the statute

7

simply provided for judicial review of " 'a decision and order issued by the state board under section 13320.' " (*Barry*, at pp. 174–175 & fn. 14.) The *Barry* court concluded that where the State Board denies review, "[t]hat decision and order is subject to judicial review, not of the state board's exercise of discretion in denying review but rather of the merits of the regional board's action." (*Id.* at p. 175.) After *Barry* was decided, the Legislature amended section 13330 to add subdivision (b), which expressly provides for judicial review of regional board actions where the State Board chooses to deny review. (Stats. 1996, ch. 659, § 24.)

Relying on *Barry*, the *Johnson* court concluded that the State Board's refusal to consider the appellants' petition challenging a regional board order was not subject to judicial review. (*Johnson, supra*, 123 Cal.App.4th at pp. 1111–1113.) The court further concluded that section 13330 "makes clear that where the State Board denies review, the court exercises independent judgment in reviewing the decision or order of *the regional board*, not that of the State Board." (*Id.* at pp. 1113–1114, citing § 13330, subds. (a), (b), and (d).)

The court in *Monterey Coastkeeper* agreed with *Johnson* that the "State Board's decision to review a regional water board action is entirely within the State Board's discretion and not subject to judicial review," though it did not provide further analysis of the issue. (*Monterey Coastkeeper, supra*, 76 Cal.App.5th at p. 14; see also *Sonoma Luxury Resort LLC v. California Regional Water Quality Control Bd.* (2023) 96 Cal.App.5th 935, 945 [trial court did not abuse its discretion in denying plaintiff leave to amend complaint because "no amendment could make . . . the State Board's declination to review the Regional Board's decision susceptible to judicial review"].)

8

Although Bareilles argues that *Johnson* and *Monterey Coastkeeper* were wrongly decided, he does not dispute that the State Board's review under section 13320 is discretionary. Indeed, subdivision (a) of the statute states that the State Board "may" review the regional board's order on its own motion. "The ordinary import of 'may' is a grant of discretion." (*In re Richard E.* (1978) 21 Cal.3d 349, 354, superseded by statute on other grounds as stated in *In re Mario C.* (1990) 226 Cal.App.3d 599, 606.) Under the Water Code, "may" is expressly made permissive. (§ 15.) Thus, the language of section 13320 demonstrates an intent to give the State Board discretion to review a regional board order on its own motion. (§ 13320, subd. (a).)

Nor does Bareilles disagree with the *Barry* and *Johnson* courts' conclusion that section 13330 provides judicial review of the regional board order but not of the State Board's decision to deny review. (*Johnson*, *supra*, 123 Cal.App.4th at pp. 1113–1114; *Barry*, *supra*, 194 Cal.App.3d at pp. 175–177.) While the parties in *Barry*, *Johnson*, and *Monterey Coastkeeper* appeared to have petitioned the State Board for review within the 30-day deadline established by section 13320, subdivision (a), we see no reason why section 13330 would provide judicial review of a State Board's decision to not review a regional board order on its own motion but not its decision to deny review upon a party's timely petition for review. If judicial review of the State Board's declination of an untimely request for review was required, it would render section 13320, subdivision (a)'s deadline for petitioning the State Board for review superfluous in many cases and could subject the State Board to endless judicial scrutiny. (See *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122 ["[t]he court will apply common sense to the language at hand and interpret the statute to make it workable and reasonable"].) Moreover, section 13330 specifically addresses the situation

9

where a State Board "denies review" but says nothing about the State Board's decision to not initiate a review on its own motion.  (See § 13330, subd. (b).)

Bareilles's sole contention on appeal is that *Johnson* and *Monterey Coastkeeper*'s conclusion that the State Board's declination of review under section 13320 was not subject to judicial review was erroneous because it violates California's separation of powers doctrine.[3]  For the reasons explained below, we reject this contention.

## B. *Separation of Powers*

Article III, section 3 of the state Constitution provides:  "The powers of state government are legislative, executive and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."  Accordingly, "[j]udicial power is in the courts and their function is to declare the law and determine the rights of parties to a controversy before the court.  [Citation.]  Executive or administrative officers cannot exercise or interfere with judicial powers."  (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1235; see *Mandel v. Myers* (1981) 29 Cal.3d 531, 547 ["Our constitution assigns the resolution of . . . specific controversies to the judicial branch of the government"].)

Despite the breadth of Article III, section 3, "[a]n administrative officer or agency may exercise quasi-judicial or legislative powers if those powers are clearly defined by the Legislature and subject to judicial review."

_____

[3] The State Board contends Bareilles is precluded from making his separation of powers argument since he did not raise it in the trial court. However, "[w]hen a demurrer is sustained without leave to amend the [appellant] may advance on appeal a new legal theory why the allegations of the [complaint] state a cause of action."  (*20th Century Ins. Co. v. Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3 (*Quackenbush*); accord, *TruConnect Communications, Inc. v. Maximus Inc.* (2023) 91 Cal.App.5th 497, 508, fn. 5.)

(*Quackenbush*, *supra*, 64 Cal.App.4th at p. 141.) An administrative agency acts in a quasi-legislative capacity when it formulates rules of wide application, while quasi-judicial action involves the application of rules to specific facts. (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 231, superseded by constitutional amendment on other grounds as stated in *Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 791–792.)

Here, the State Board was authorized by statute to review the ACL order on its own motion. (§ 13320, subd. (a).) Its decision to decline review in this case was not an act formulating general rules, and Bareilles does not claim otherwise. Rather, he argues that precluding judicial review of the State Board's declination of review would impair the judiciary's power to apply the law to "particular facts" and resolve "specific" controversies between parties. Accordingly, in determining whether judicial review is required here, the question is whether the State Board was exercising quasi-judicial powers in declining to review the ACL order. (See *Quackenbush*, *supra*, 64 Cal.App.4th at p. 141.) We conclude it was not.

"Quasi-judicial power is defined as '[a]n administrative agency's power to *adjudicate* the rights of those who appear before it.' " (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 636.) "The essential characteristic of [a] quasi-judicial body is its fact finding power and the concomitant requirement to make a determination or adjudication of fact in connection with matters property submitted to it after a hearing." (*Le Strange v. City of Berkeley* (1962) 210 Cal.App.2d 313, 323; see also *Alborzi v. University of Southern California* (2020) 55 Cal.App.5th 155, 169 [" 'quasi-judicial acts involve the determination and application of facts peculiar to an individual case' "].)

11

"The fact that an administrative officer exercises judgment and discretion in the performance of his or her duties does not make these actions or powers judicial in nature." (7 Witkin, Summary of Cal. Law (11th ed. 2025) Constitutional Law, § 158, p. 280; *East Bay Municipal Utility Dist. v. Department of Public Works* (1934) 1 Cal.2d 476, 479; *People ex rel. Lockyer v. Sun Pacific Farming Co.*, *supra*, 77 Cal.App.4th at p. 636 [agency's decision as to whether to file a lawsuit was not an exercise of quasi-judicial power because it was not an adjudication of the parties' rights]; *Quackenbush*, *supra*, 64 Cal.App.4th at pp. 137–138, 141–142.)

In *Quackenbush*, for example, the Commissioner of Insurance of the State of California issued a letter in response to a homeowner's request for his interpretation and opinion regarding the application of the statute of limitations to claims for damage caused by an earthquake. (*Quackenbush*, *supra*, 64 Cal.App.4th at pp. 137–138.) An insurance company filed a petition in the superior court seeking a peremptory writ directing the Commissioner to rescind the letter and to cease and desist from disseminating his opinion regarding claims arising from the earthquake. (*Id.* at p. 138.) The trial court sustained the Commissioner's demurrer to the petition without leave to amend. (*Ibid.*)

On appeal, the insurance company argued that the Commissioner's letter violated the constitutional principle of separation of powers. (*Quackenbush*, *supra*, 64 Cal.App.4th at p. 141.) This court rejected the argument, reasoning that the Commissioner, in issuing the letter, did not attempt to enforce his interpretation of the statute of limitations in a binding adjudication or promulgate any regulation purporting to implement his interpretation. (*Id.* at p. 142.) "[T]he Commissioner's actions simply do not involve the exercise of any quasi-judicial or legislative powers. . . .

12

[The insurance company's] judicial remedies, including the right of judicial review, are not impinged upon, in any way, by the Commissioner's actions." (*Ibid.*)

That is also the case here. By declining to review the ACL order, the State Board has not usurped judicial power. It has not determined Bareilles's rights or declared law. Moreover, it is only because of Bareilles's failure to exhaust his administrative remedies that his right to judicial review of the ACL order is now extinguished. (See § 13320, subd. (a).) In other words, the State Board's decision to not review the ACL order on its own motion has not affected Bareilles's right to seek judicial review of the order.

Bareilles does not address whether the State Board exercised quasi-judicial powers in declining to review the ACL order. He argues that foreclosing judicial review of the State Board's decision to decline review would prevent the judiciary from exercising its core function to resolve "specific controversies" between parties (see *Mandel v. Myers*, *supra*, 29 Cal.3d at p. 547), because it would preclude courts from applying the "abuse of discretion standard" to "the administrative record of a State Board decision not to exercise its discretionary authority" under section 13320, subdivision (a).

Bareilles's reasoning is both circular and wrong. It is circular because it is based on the assumption that a State Board's discretionary decision under section 13320 resolved the type of "controversy" that would have been decided by the courts. It is wrong in its premise because it ignores the reason why judicial review is required for an administrative agency's quasi-judicial acts—and not just any discretionary act—which is to ensure that "judicial power . . . remains ultimately in the courts." (*McHugh v. Santa Monica Rent*

13

*Control Bd.* (1989) 49 Cal.3d 348, 372, italics omitted.) An administrative agency that has not adjudicated the rights of the parties before it has not implicated the judiciary's essential function to " ' "declare the law and define the rights of the parties under it." ' " (*People v. Bird* (1931) 212 Cal. 632, 640; see also *Marin Water etc. v. Railroad Comm.* (1916) 171 Cal. 706, 712 ["To determine 'what shall be adjudged or decreed between the parties, and with whom is the right of the case, is judicial action.' "].)

Because no rights were adjudicated by the State Board in this case, judicial review of the State Board's decision to decline review of the ACL order was not required under California's separation of powers doctrine.[4] The trial court therefore did not err in sustaining respondents' demurrer on the ground that the State Board's decision to not review the ACL order was not subject to judicial review.

### III.   DISPOSITION

The judgment is affirmed.

---

[4] In light of this conclusion, we need not address the State Board's argument that Bareilles's separation of powers argument is an attack on the doctrine of exhaustion of administrative remedies.

_____

Langhorne Wilson, J.

WE CONCUR:

_____

Banke, Acting P. J.

_____

Smiley, J.

*Bareilles v. State Water Resources Control Board et al.*(A171456)

Filed 12/16/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| KENNETH M. BAREILLES,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>STATE WATER RESOURCES<br>CONTROL BOARD et al.,<br><br>     Defendants and Respondents. | A171456<br><br>(Sonoma County<br>Super. Ct. No. SCV-273798)<br><br>ORDER GRANTING<br>PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

      The opinion in the above-entitled matter, filed on November 17, 2025, was not certified for publication in the Official Reports. After this court's review of respondent State Water Resources Control Board's request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Date: _____               _____Acting P.J.

1

Trial Court: Sonoma County Superior Court

Trial Judge:        Hon. Bradford J. DeMeo

Counsel:

Anthony Lee Francois, Briscoe Ivester & Bazel LLP for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tracy L. Winsor, Senior Assistant Attorney General, Janelle M. Smith, Supervising Deputy Attorney General, Corey M. Moffat and Sarae T. Snyder, Deputy Attorneys General for Defendants and Respondents.